# Wytheville

## H. L. SPENCE V. AMERICAN OIL COMPANY, INC., ET AL.

June 8, 1938.*

Present, Holt, Hudgins, Gregory, Browning
and Eggleston, JJ.

*Rehearing refused September 9, 1938.

The opinion states the case.

*M. J. Fulton, W. Griffith Purcell* and *Anthony J. Baroody,* for the plaintiff in error.

*Tucker, Bronson, Satterfield & Mays,* for American Oil Company, Inc.

*Hunton, Williams, Anderson, Gay & Moore,* for Standard Oil Company of New Jersey.

BROWNING, J., delivered the opinion of the court.

The action here was instituted by H. L. Spence against the American Oil Company, Inc., and the Standard Oil Company of New Jersey. The parties will be generally referred to as plaintiff, American and Standard, respectively. It presents a case of alleged duality of negligence, in that the plaintiff charged in his notice of motion that both American and Standard were guilty of negligence which caused the injury to his car.

Standard demurred to the notice of motion for judgment, which was overruled by the trial court. When the evidence was ended Standard moved the court to strike all the plaintiff's evidence which referred to it, but this motion was overruled. The court instructed the jury at the instance of the plaintiff and both defendants and the jury rendered its verdict in favor of both defendants, which was confirmed by the trial court, after it had overruled the plaintiff's motion to set aside the verdict as contrary to the law and the evidence.

It is elemental to say that the facts of the case, where there is a conflict, must be stated in accordance with the

evidence that is most favorable to the parties who prevailed in the trial court and who come to us, as in this case, with ·the verdict of the jury and the judgment of the court in their favor—a position which is the strongest known to the law in a contest of this nature.

With this in mind, the facts, stated as succinctly and briefly as we can, are these:

The plaintiff, with two of his friends, Mr. and Mrs. W. J. Glasgow, drove from Richmond to Washington on a business trip on the 13th day of June, 1935. He drove a Pierce Arrow automobile, which was practically new. They stopped in Alexandria, Virginia, on their return to Richmond in the afternoon, at a station of the Standard Oil Company where his car was serviced, which included the filling of the tank with gasoline. From thence he proceeded in the direction of Richmond and when he had gone not more than a mile his car stopped, after having sputtered, at the intersection of Washington and Franklin streets, in the city of Alexandria. At the intersection there is a filling station operated by the defendant, American Oil Company, which is located at the southwest corner of the intersection. The filling station abuts both streets, having entrance and exit driveways fronting thereon. On the east side of the station there is a down-grade southward. There are no sidewalks but the street is equipped with curbing and a gutter, in which there is a drain.

In his dilemma the plaintiff went from his stalled car to the American oil station across Franklin street to obtain help. There were two employees of the American Oil Company at the station, who were Herbert L. Ogden, manager, and Bertram A. Lynn, relief operator. The plaintiff asked Mr. Lynn to aid him but was told that he would have to see Mr. Ogden. The upshot of it was that upon Mr. Ogden's direction Lynn went over to the car to see what he could do for the plaintiff. Upon examination Lynn ascertained that the gasoline in the automobile contained water. The plaintiff then requested him to drain the watered gasoline from the tank. Traffic, in the meanwhile, was being held

up and became congested and Lynn declined to undertake
this unless the car could be moved across the street and
placed at the curb. They secured help from a passerby,
who shoved the plaintiff's automobile, with his own, across
the street, the plaintiff being at the wheel and guiding his
machine.

The plaintiff then renewed his request that Mr. Lynn
drain his tank, asking him if he had any vessel into which
the gasoline could be drained. Mr. Lynn found a tube test-
pan, which had a capacity of some five or six gallons, but
the tank contained twenty-four gallons. Lynn put this pan
under the car and started the draining process in accord-
ance with the direction of the plaintiff and in his presence.
While this was in progress the plaintiff became impatient
or excited and stated that he wanted to go back to the
Standard station to inform them that they had sold him
water rather than gasoline and he asked Lynn, who was
attending to the draining operation, to go with him. Again
he was told that he would have to secure the permission of
Mr. Ogden. When this was accomplished Lynn started in
his own car with the plaintiff and his friend, Mr. Glasgow,
for the Standard station, about a mile distant, leaving Mrs.
Glasgow on the front seat of the plaintiff's car with no one
in charge of the operation of draining the tank. When
Ogden consented to the request of the plaintiff to let Lynn
take him to the Standard station he told the plaintiff that
Lynn's absence would leave only himself there to attend to
the business of the station, saying that it seemed when only
one was there that the cars to be serviced came in all at one
time and that it left him in pretty bad straits as he would
be the only one there to wait on the trade.

The test-pan filled up and overflowed, the escaping gaso-
line running down the street and through the drain, being,
of course, exposed. An unidentified negro was seen by Mrs.
Glasgow, who was in the car, passing along the street and
he was heard to say: "I wonder if this stuff is gasoline or
water," and he lighted a match and threw it into the escap-
ing gasoline, which was thereby ignited and the plaintiff's

car was burned to such an extent that it had to be left where it was until the next morning, when service people of the Pierce Arrow Company came from Washington for it. The plaintiff was deprived of the use of his car for some fourteen days while it was undergoing repairs.

When the plaintiff went back to the Standard station and charged them with the act of selling him water rather than gasoline, Mr. Watkins, an employee of Standard, made a test of the gasoline which was in a tank from which the gasoline in the plaintiff's car had been drawn and the result of this test, made in the presence of the plaintiff and Lynn, was that the gasoline in the storage tank did not disclose the presence of water.

The notice of motion for judgment charged that Standard's agents sold the plaintiff watered gasoline and that this caused his automobile to stop. After the general allegation the alleged negligence of the American Oil Company was set out in detail, which is approximately in accordance with the ensuing incidents which happened after the plaintiff applied for aid of the operatives of the American station, which have been already referred to.

We think it is perfectly patent that between the alleged negligence of the Standard and the injury to the property of the plaintiff there were efficient and independent intervening agencies, negligent or otherwise, which were destructive of any sequential connection between the alleged original wrong of the Standard and the damage to the plaintiff. Being convinced of the force and soundness of this proposition, we think that the position of the Standard, in urging cross-error of the court in overruling its demurrer and in refusing to strike the evidence referring to it, is well taken.

This court said, in the case of *Winfree* v. *Jones*, 104 Va. 39, 51 S. E. 153, 155, 1 L. R. A. (N. S.) 201: "In the case at bar, however, the question is so entirely free from doubt that the court can, as a matter of law, declare that the negligence alleged was not the proximate cause of the injury, reparation for which is here sought in damages. It is,

therefore, unnecessary to consider the instructions and the questions discussed in connection therewith, for under no instructions would a recovery by the plaintiff be justified under the facts of this case."

This pronouncement well illustrates our conviction with respect to the condition of the Standard in the case under consideration. Conceding the truth of the allegation that the Standard sold the plaintiff watered gasoline, which is the effect of the Standard's demurrer, the alleged tortious act, if a cause at all, was the remote—not the proximate—cause of the injury.

The following quotation from the case of *Norfolk & Western R. Co.* v. *Brown,* 91 Va. 668, 22 S. E. 496, is sufficiently full and clear as to make its facts understandable and render it applicable to the case in judgment (page 497) :

"But, even if it was negligence, as we do not think it was, in the defendant company under the facts in this case, to have cars in the same train of unequal height, with mismatched couplings, we do not think that such defect was the proximate cause of the plaintiff's injury.

"The mismatched couplings furnished an occasion for uncoupling the cars in a slower way than if they had not been mismatched, but there was no risk of any injury from such delay whilst the cars were standing still. It was the negligence in driving back the train, and not the mismatched couplings, which was the direct, proximate cause of the injury. The failure to have the cars of equal height and the driving back of the train were distinct and independent, and had no connection with each other; the failure to have cars of equal height being but the remote cause, whilst the act of negligence in driving the train back was the proximate cause within the meaning of the cases.

"Mr. Cooley states the doctrine as follows: 'If an injury has resulted from a certain wrongful act or omission, but only through or by means of some intervening cause, from which last cause the injury follows as a direct and immediate consequence, the law will refer the damages to the last or proximate cause, and refuse to trace it to that which

is remote.' Cooley on Torts, page 73; *Pease, Adm'x* v. *Chicago & North West. Ry.* [61 Wis. 163], 20 N. W. 908."

Equally appropriate is the case of *Chesapeake & Ohio Railway Co.* v. *Wills,* 111 Va. 32, 68 S. E. 395, 32 L. R. A. (N. S.) 280. In this case the railroad company was charged with negligence in directing the defendant in error, who had purchased a ticket from the railway company, from Gordonsville to Louisa, and was directed by the company's agent at the former place to board a train going in the wrong direction. The defendant in error, instead of remaining on the train and contending for such damage as he might have sustained by being taken away from his destination, elected to step off of a moving train, by which act he sustained serious injuries. The company's demurrer to the declaration was overruled by the trial court. This court reversed the judgment of the trial court and held that Wills' injury was caused by his own act of alighting from the train while it was in motion.

The case of *Fowlkes* v. *Southern Ry. Co.,* 96 Va. 742, 32 S. E. 464, was cited with approval and the following quotation from this case was incorporated in the opinion (68 S. E. page 397):

"That the defendant was guilty of negligence is conceded, and that it is liable in damages for the direct consequences of that negligence is also conceded. * * * It is not only requisite that damages, actual or inferential, should be suffered, but this damage must be the legitimate sequence of the thing amiss. The maxim of the law here applicable is, that in law the immediate and not the remote cause of an event is regarded. In other words, the law always refers the injury to the proximate, not to the remote cause. If an injury has resulted in consequence of a certain wrongful act or omission, but only through or by means of some intervening cause, from which last cause the injury followed as a direct and immediate consequence, the law will refer the damage to the last or proximate cause, and refuse to trace it to that which was more remote. To the proximate cause we may usually trace consequences with

some degree of assurance, but beyond that we enter a field of conjecture where the uncertainty renders the attempt at exact conclusions futile. If the wrong and the resulting damage are not known by common experience to be naturally and usually in sequence, and the damage does not, according to the ordinary course of events, follow from the wrong, then the wrong and the damage are not sufficiently conjoined or concatenated as cause and effect to support an action."

In the *Chesapeake & Ohio Railway Co.* v. *Wills Case, supra,* the court continued: "In this case the negligence of the railroad company consisted in such acts of omission and commission alleged in the declaration as resulted in the plaintiff getting upon the wrong train, and upon the authority of the case just cited there was an ample remedy for whatever wrong he had sustained by reason of the defendant's negligence. The direct and efficient cause of the injury for which this suit was brought, was the alighting from the train while in motion. In that act the railroad company had no part. As we have seen, the declaration does not aver that any agent of the company directed, advised, encouraged, or even had knowledge of the plaintiff's intention to alight from the train; so that, between the negligent act of the railroad company and the injury suffered by the plaintiff there was the intervening act of a responsible agent, that responsible agent being the plaintiff himself. While the plaintiff, as a result of the defendant's negligence, had taken the wrong train, but was in a place of safety and of his own accord alighted from the train, it cannot be said that the injury which he then received was the natural and continuous sequence, unbroken by any new or independent cause, of the negligence of the defendant which caused him to enter the wrong train."

A moment ago, in stating the facts, we said that the plaintiff, and those who went with him back to the Standard station, went off leaving no one in charge of the operation of draining the tank. We are not without awareness that the plaintiff testified that Mr. Ogden drained the gas

out. However, a close examination of his testimony, after he made this statement, reveals the fact that this positive assertion was but a surmise, because he later testified that when he went out of the station (American), he did not pass his car and did not see the container, and that he did not observe the draining process at the time that he left for the Standard station. Mr. Lynn testified that *he* put the tire test-pan under the car at the plaintiff's request, and that when he went off with the plaintiff at his instance he left the gas running, and that the plaintiff was charged with the duty of making an arrangement to have it looked after. This witness frankly stated that he should have been left with the operation to take care of it instead of being taken away by the plaintiff. Mr. Ogden testified that the plaintiff asked him to allow Lynn to take him back to the Standard station. He further testified that while they were gone he was busy waiting on customers and he heard someone cry, "Fire!" He then observed the car on fire, and when the plaintiff and Mr. Lynn returned, the former was excited at what he saw, and he said to Mr. Ogden: "I left this car in your charge." Mr. Ogden replied, "No, you didn't, Mr. Spence. I just agreed to let Mr. Lynn take you back down to the Standard station as you requested, and doing you a favor." And the plaintiff said: "You got to put me up to the hotel and pay my expenses." And Mr. Ogden further said, "And in the meantime, the lady in the car says: 'It was a negro threw a match in this gas running down this gutter.' So Mr. Spence says: 'Keep quiet.'"

Mr. Glasgow, the friend of the plaintiff and his traveling companion, testified that when the plaintiff and Lynn and himself left to go back to the Standard station, Mr. Ogden was standing about the middle of the pavement, though he undertook to qualify this by stating that the automobile was just by the curb at the side of the pavement.

But it must ever be borne in mind that as to the facts, when they are conflicting, the verdict of the jury makes the version of the prevailing party a verity. In our opinion, the evidence tends to show that the entire situa-

tion, after the plaintiff sought help at the American station, its handling and its direction was put into operation and induced by the plaintiff. That in his excitement and haste to put the original blame where he thought it belonged he created and placed in being a set of circumstances which resulted in the injury sustained. The commanding and dominating influence in the circumstances was his own. If anything was the proximate cause of the injury before the careless throwing of the lighted match by the curious negro passing by, it is to be found in the conduct of the plaintiff.

We have presented here, as was stated in the case of *Milwaukee & St. Paul Ry. Co.* v. *Kellogg,* 94 U. S. 469, 475, 24 L. Ed. 256, 259, " * * * the oft-embarrassing question of what is and what is not the proximate cause of an injury. * * * The true rule is, that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances of the facts attending it. The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied to the other end, that force being the proximate cause of the movement, or as in the oft-cited case of the squib thrown in the market place. *Scott* v. *Shepherd (Squib Case),* 2 W. Bl. 892 [3 Wils. 403]. The question always is: Was there an unbroken connection between the wrongful act and the injury, a continuous operation; did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? It is admitted that the rule is difficult of application. But it is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances. * * * The inquiry must, there-

fore, always be whether there was any intermediate cause disconnected from the primary fault, and self operating, which produced the injury. Here lies the difficulty. But the inquiry must be answered in accordance with common understanding. In a succession of dependent events, an interval may always be seen by an acute mind between a cause and its effect, though it may be so imperceptible as to be overlooked by a common mind. Thus, if a building be set on fire by negligence, and an adjoining building be destroyed without any negligence of the occupants of the first, no one would doubt that the destruction of the second was due to the negligence that caused the burning of the first. Yet in truth, in a very legitimate sense, the immediate cause of the burning of the second was the burning of the first. The same might be said of the burning of the furniture in the first. Such refinements are too minute for rules of social conduct. In the nature of things, there is in every transaction a succession of events, more or less dependent upon those preceding, and it is the province of a jury to look at this succession of events or facts, and ascertain whether they are naturally and probably connected with each other by a continuous sequence, or are dissevered by new and independent agencies, and this must be determined in view of the circumstances existing at the time."

In Cooley on Torts, 4th Ed., Vol. 1, Sec. 53, the heading is: "Tests of Proximate Cause," and the text continues as follows: "A proximate cause has been aptly defined as 'one which in natural sequence, undisturbed by any independent cause, produces the result complained of.'" The authorities for the above definition are found in the appended note: *"Behling* v. *Southwest Pa. Pipe Lines,* 160 Pa. St. 359, 28 A. 777, 40 Am. St. Rep. 724. And see *Lake Erie & W. R. Co.* v. *Charman,* 161 Ind. 95, 67 N. E. 923; *Gudfelder* v. *Pittsburg, C., C. & St. L. R. Co.,* 207 Pa. 629, 57 A. 70. The law of proximate causes requires an unbroken sequence between the prime act of negligence and the injury; and where it appears that an active cause intervened, the prime act will not be deemed the proximate cause

unless the intervening act was itself a result reasonably to have been expected from the prime act, and hence negligent approach of a railroad train to a crossing was not the proximate cause of a collision with an automobile, the driver of which saw the train in time to have stopped, and would have done so except that his brakes failed to work. *Keel* v. *Seaboard Air Line Ry.*, 122 S. C. 17, 114 S. E. 761."

An interesting article on proximate cause is found in the Michigan Law Review, vol. 8, at page 578, which is, in part, as follows: "The steamer Santa Rita, while lying beside the wharf at Oakland, California, discharged a quantity of fuel oil from her hold into the bay. The wharf by some independent means caught fire and damaged part of a vessel lying beside the wharf. The oil in the bay was ignited and did further damage to the vessel. The owner of the vessel libelled the Santa Rita to recover damages. (A statute of California makes it a disdemeanor to discharge fuel oil into the waters of any navigable bay in the state.) It was held that the act of the Santa Rita was not the proximate cause of the injury and that she was not liable. *The Santa Rita* (1909), D. C., N. D., Cal. 173 F. 413."

The author of the article or paper cited the case of *Hoag* v. *Lake Shore & M. S. R. Co.*, 85 Pa. 293, 27 Am. Rep. 653, in which the defendant's train ran into a slide of earth and stone and was wrecked, an oil car burst, the oil was ignited, floated down a stream near the tracks and set fire to plaintiff's building. The court said: "A man's responsibility for his negligence and that of his servants must end somewhere. * * * An admittedly correct principle * * * may be extended so as to reach the *reductio ad absurdum*, so far as it applies to the practical business of life." The court held the defendant's negligence was not the proximate cause of plaintiff's loss.

As to the principal case, that is the *Santa Rita Case*, the court held to the natural and probable consequence theory. "A man * * * of ordinary prudence and foresight would not have thought, in view of all the surrounding circumstances, that fuel oil, if discharged into the waters of the

bay, with its tides and winds, would probably be set on fire, by the accidental or negligent burning of the wharf, or by live coals thrown into the bay and coming in contact with the oil." (173 F., page 418).

The very recent and valuable work, Restatement of the Law of Torts, vol. 2, Negligence, page 1173, section 435, in its unique and impressive manner of statement, calls the original wrongdoer, in treating the subject of causation, the actor, and as to the necessity of foreseeableness as an element of proximate cause it says: "The fact that the actor, at the time of his negligent conduct, neither realized nor should have realized that it might cause harm to another in the manner in which it occurred, is not of itself sufficient to prevent him from being liable for the other's harm if his conduct was negligent towards the other and was in all other particulars a substantial factor in bringing about the harm. However, the manner in which the harm occurs may involve the cooperation of other assisting factors so many and important that the actor's negligence cannot be regarded as a substantial factor in bringing about the harm (see section 433, Clause (a)). So too, the manner in which the harm occurs may be so highly extraordinary as to prevent the actor's conduct from being a substantial factor in bringing it about (see section 433, Clause (d))."

From section 433 of the same work, on page 1167, we take the following: "There are frequently a number of events each of which is not only a necessary antecedent to the other's harm, but is also recognizable as having an appreciable effect in bringing it about. Of these the actor's conduct is only one. Some other event which is a contributing factor in producing the harm may have such a predominant effect in bringing it about as to make the effect of the actor's negligence insignificant and, therefore, to prevent it from being a substantial factor. So too, although no one of the contributing factors may have such a predominant effect, their combined effect may, as it were, so dilute the effects of the actor's negligence as to prevent it from being a substantial factor."

*Doss, Adm'x* v. *Big Stone Gap and Skidmore*, 145 Va. 520, 134 S. E. 563, is an illuminating case on the question of proximate cause. The plaintiff alleged in her declaration that the town of Big Stone Gap was negligent in that it had established a municipal airport and did not maintain a safe approach thereto; that while her intestate was driving his automobile on the detour which he was forced to use because the town failed to keep the usual and proper approach in order, he was killed by Skidmore, the aviator, who was negligent in the operation of his airplane, causing it to strike the intestate's car, and we said (page 565):

"In the instant case the proximate cause of the injury was the act of Skidmore, the aviator, and no act or omission on the part of the town of Big Stone Gap. The death of the plaintiff's intestate was not 'the natural and probable consequence' of the alleged negligence or wrongful act of the town. It could not have been foreseen that an injury to any one would probably have been suffered as a result of the alleged negligent acts of the town complained of. Not merely the particular injury, but any injury."

Another case decided by this court, the opinion having been written by Mr. Justice Gregory, is that of *Wallace* v. *Jones,* 168 Va. 38, 190 S. E. 82. It contains a lucid and able statement of this opaque question and the principles announced therein are fortified by reason and applicable citations of authority.

Counsel for the plaintiff in error cited several Virginia cases upon the question of proximate cause. The statements contained in an opinion must be considered and interpreted in the light of the facts present in the particular case. In none of the cases cited are the facts similar to those in the case under consideration, but are entirely different. We do not consider those cases as applicable or controlling here.

The plaintiff in error cited three cases from the North Carolina court, which may be termed companion cases. They are *Fox* v. *Texas Co.,* 180 N. C. 543, 105 S. E. 437; *Newton* v. *Texas Co.,* 180 N. C. 561, 105 S. E. 433, and *Stone* v.

*Texas Co.*, 180 N. C. 546, 105 S. E. 425, 12 A. L. R. 1297. They all grew out of the same accident, which occurred in the populous and growing city of Greensboro, North Carolina. In those cases the Texas Company established a storage plant in the city without a license and it violated an ordinance, in that it stored a greater quantity of gasoline than was allowable, and the fact that the defendant, the Texas Company, had possession, control and management of its plant and should have superior knowledge as to its condition and that it had given no satisfactory explanation of how the gasoline got into the street was accentuated as important in determining the question of liability. It was also pointed out that it permitted gasoline to escape from its tank and run down a public street and under the tracks of the Southern Railway, and this was held to be a continuing hazard which combined with the escaping sparks from a passing train, resulting in the ignition of the gasoline, which caused the plaintiff's injury. The facts in each of these cases are wholly dissimilar to those of the case under consideration.

There is no merit in the contention of the plaintiff in error that the defendants could not take advantage of the contributory negligence of the plaintiff because the defendants did not make known their intention to rely upon this defense. The plaintiff failed to comply with the provisions of the statute, section 6092 of the Code of Virginia, which would have entitled him to be informed of such reliance on the part of the defendants.

Upon a careful consideration of the instructions given by the trial court and which are made the subject of objection and exception by the plaintiff in error, we think that they aptly and correctly state the law which is applicable to the evidence and facts in the case and that there was ample evidence upon which the court could base them.

It follows from what we have said that, in our opinion, there was no error in the action of the court in sustaining the motion to strike out the item of $140.00 as damages sustained by the plaintiff in error for the loss of

the use of his automobile while it was undergoing repairs. This cost was incident to a situation brought about by himself. And, further, there was no adequate proof of such damage. The damages claimed are uncertain and unascertained.

In 8 R. C. L., page 38, the following appears: "The damages recoverable in any case must be susceptible of ascertainment with a reasonable degree of certainty, or, as the rule is sometimes stated, in respect to the cause from which they proceed. Therefore, uncertain, contingent, or speculative damages cannot be recovered, either in actions *ex contractu,* or, in actions *ex delicto.*"

As to the original wrong attributed to the Standard, it cannot be said or convincingly reasoned that the injury to the plaintiff is accepted by common experience as naturally and usually in sequence to it, and it may then be said that "the wrong and the damages are not sufficiently conjoined or concatenated as cause and effect to support an action."

As to the American, the plaintiff's own conduct bars recovery. It may be further said that negligence, contributory negligence and proximate cause are ordinarily questions for the jury and the jury's verdict was well warranted by the evidence.

The contentions of the plaintiff in error are quite unsustainable. The judgment of the trial court is affirmed.

*Affirmed.*