**UNITED MERCHANTS & MANUFACTURERS, Inc. v. SOUTH CAROLINA ELECTRIC & GAS CO.**

No. 1321.

United States District Court
W. D. South Carolina,
Spartanburg Division.

June 5, 1953.

Haynsworth & Haynsworth, Greenville, S. C., for plaintiff.

Arthur ·M. Williams, Jr., and W. C. Mc-Lain, ·Columbia, S. C., and ·G. L. B. Rivers, Charleston, S. C., for defendant.

WILLIAMS, District Judge.

This is an action for damages for fraud and deceit. The plaintiff alleges that it owns and operates certain textile manufacturing plants in Aiken County, South Carolina, and that the electric power for these plants has been and is being furnished by the defendant herein, the South Carolina Electric & Gas Company; that the plants are located in the territory of the South Carolina Electric & Gas Company and its only source of power from any utility is from the defendant and that of necessity it must purchase its power from the South Carolina Electric & Gas Company.

Plaintiff alleges that in May, 1947 it executed a five-year contract with the defendant to supply power to its plants in Aiken County, South Carolina, which include the Seminole Mills, Bath Manufacturing Company and Clearwater Manufacturing Company; that pursuant to said contract, the defendant supplied electricity, but that in 1950 plaintiff was advised by the defendant that the defendant was going to apply to the South Carolina Public Service Commission for a rate increase which would affect all consumers and it wished to obtain the agreement of the plaintiff not to oppose such rate increase. The plaintiff states that it felt the increase was unwarranted and unjustified and that defendant was not entitled to any increase, and it so advised the defendant. When the application for a rate increase was made, plaintiff entered its objections before the Public Service Commission. After these objections had been entered by the plaintiff, plaintiff alleges that the defendant, through its duly authorized officers, approached the plaintiff and offered to work out a compromise with the plaintiff as well as other mills that, while the defendant had applied for a 15% increase before the Public Service Commission, if the plaintiff would withdraw its objections to this increase, it could enter into the same agreement which the defendant had with the Graniteville Company for the same length of time, which agreement was for an 8% general rate increase instead of a 15% increase, and the compromise agreement would run for approximately eight years. The plaintiff states that it relied upon the defendant's representation, withdrew its appearance before the Public Service Commission and thereby waived any right it had to contest the application of the defendant for a general rate increase. The plaintiff further states that immediately after it withdrew its objections from the South Carolina Public Service Commission, the defendant South Carolina Electric & Gas Company put into effect an 8% increase in the rate during the months of February, March, and April, but that during the latter part of April the defendant advised the plaintiff that its contract was expiring on April 30th and on May 1st the general rate increase of 15% which had been approved by the South Carolina Public Service Commission would be put into effect.

Plaintiff alleges that the representations made by the defendant through its duly authorized agent relating to the rate of increase to the plaintiff were false; that the agent of the defendant knew of their falsity and that he intended that the plaintiff should act upon these material representations, and that the plaintiff was ignorant that the defendant's representations were false; that relying upon such false and fraudulent representations, the plaintiff withdrew its objections to the rate increase, and that plaintiff's rights were not only prejudiced but wholly extinguished; that as a result of the false and fraudulent representations of the defendant which caused the plaintiff to withdraw its objections before the South Carolina Public Service Commission, the plaintiff is now having to pay the increased rates which were put into effect by the South Carolina Public Service Commission, to wit: a 15% increase in its basic rates rather than an 8% increase as was represented by the defendant, and that it will have to pay on the basis of the 15% increase over a period of some eight or nine years instead of having to pay the 8% increase over that period of years; and that the plaintiff as a result of such fraudulent representations has been damaged in the sum of $200,000.

The plaintiff has admitted that all of the alleged fraudulent representations and agreement referred to in its complaint were

verbal, and that there is no writing of any kind to evidence this agreement.

On August 29, 1951 the South Carolina Electric & Gas Company filed with the South Carolina Public Service Commission its application "for authority to change the designation of certain of its electric and gas tariffs, Docket No. 7850." After the required legal notice was given the public by advertisement in papers throughout its service area, this matter came on for a hearing before the Commission on the 30th day of October, 1951. The following appearances were noted, and may be found on page one of the transcript of testimony:

"For the Commission: Chairman J. C. Darby presiding; Commissioners: Chas. A. Rice, F. B. Hines, Edward Wimberly; Irvine F. Belser, Assistant Attorney General, C. R. Boyle, Assistant Director Electrical Utilities Division, L. R. Miller, Rate Engineer, Utilities Division, W. Curtis Sheely, Chief Accountant, Electrical Utilities Division.

"For Applicant: W. C. McLain, Attorney, Columbia, S. C., Arthur M. Williams, Jr., Attorney, Columbia, S. C., J. W. Wolfe, Attorney, Spartanburg, S. C.

"In Opposition: On behalf of the City of Columbia: John W. Sholenberger, Assistant City Attorney, Columbia, S. C., C. T. Graydon, Attorney, Columbia, S. C. On behalf of the City of Charleston: Hon. Wm. McG. Morrison, Mayor, Malcolm E. Crosland, Corporation Counsel, Frank H. Bailey, Assistant Corporation Counsel. On behalf of the town of Walterboro, S. C.: W. J. McLeod, Jr., Attorney, Hon. H. H. Sweat, Mayor, John B. Parrimore, Sec. Chamber of Commerce. On behalf of the town of St. George: Hon. J. H. Bryant, Mayor.

"Other Appearances: Lionel K. Legge, of Legge and Gibbes, Attorneys, Charleston, S. C., on behalf of: Pacific Mills, Columbia, S. C., Union-Buffalo Mills, Union, S. C., Red Bank Mill, Lexington, S. C., Columbia Mills Co., Columbia, S. C.

"By Telegram: United Merchants and Manufacturers, Inc., 1407 Broadway, New York, for plants located at Buffalo, Union, Clearwater, Bath and Langley, S. C."

The hearing extended over a period of four months, being held on the following dates:

>October 30, 1951
>November 7, 1951
>November 8, 1951
>December 3, 1951
>December 4, 1951
>December 5, 1951
>January 7, 1952
>January 8, 1952

Six hundred and eighty-eight pages of testimony were taken, and over twenty-five exhibits, some of which ran to as high as twenty-eight pages in number, were introduced in evidence. The City of Columbia, in its opposition to the rate, used the following expert witnesses, in addition to being represented by two very able attorneys: Martin T. Bennett, Consulting Engineer of New York City, L. W. Pollard, member of the firm of Barber Keel & Associates, Consulting Engineer of Columbia, South Carolina. Mr. Pollard was formerly Chief of the Utility Division of the South Carolina Public Service Commission.

On January 16, 1952 the Commission issued its order E-675, granting in substance the petition of South Carolina Electric & Gas Company.

The defendant's motion to dismiss the complaint may be summarized generally by the following questions of law:

1. Does the complaint state a cause of action?

>(a) Can all the elements of fraud
>be proven?

2. Is this action a collateral attack upon an order of the South Carolina Public Service Commission, and therefore barred?

3. Is the action barred as a result of the Statute of Frauds?

I. Does the Complaint State a Cause of Action? (a) Can All the Elements of Fraud be Proven?

The plaintiff's action sounds in fraud and in order to maintain it, it must establish the existence of all the elements of fraud. Fraud is composed of four essential elements, namely:

1. A representation made as to a statement of fact which was untrue, and known by the party making it to be untrue (or else recklessly made by such party); and,

2. Made with the intent to deceive and for the purpose of inducing the other party to act upon it; and,

3. Relied upon by such other party in such a manner as to induce such other party to act; and,

4. The action thus taken must have resulted in injury or damage to such other party. 23 Am.Jur., Fraud & Deceit, Sec. 20; Halsey v. Minnesota-South Carolina Land & Timber Co., 174 S.C. 97, 177 S.E. 29, 100 A.L.R. 1; State v. Bolyn, 143 S.C. 63, 141 S.E. 165; Gomillion v. Forsythe, 218 S.C. 211, 62 S.E.2d 297.

Allegations of the first three elements of fraud are made in the complaint. The only question is as to the fourth element, to wit: "The action thus taken must have resulted in injury or damage to such other party."

There is no question that the Public Service Commission has the authority to investigate and fix rates and if an improper rate is fixed, the Commission has the power to adjust the rate back to the time when it was first improperly charged. 1952 Code of Laws of South Carolina, Title 24, Secs. 32, 35 and 112.

If there were any question that the Public Service Commission has the authority to adjust the rates back to the time when they were improperly charged, this question was disposed of by plaintiff's admission of receipt of a letter addressed to the plaintiff in which the defendant agreed that if the South Carolina Public Service Commission should change the rate of service in question, the defendant would voluntarily adjust the rates back to the time they were first changed.

I am of the opinion that the plaintiff will be unable to prove any damages. In the first place, the defendant has agreed to pay the plaintiff any amount which might be due as a result of the adjustment of the rates, and even if it had not agreed to do this I do not think that it would be possible for the plaintiff to prove any damages. In order to prove damages, it would be necessary for the plaintiff to prove that the Public Service Commission would have reached a different conclusion than that which was reached as a result of the various hearings which were held. No damages can exist where the defendant charges the rate fixed by the Public Service Commission.

As pointed out above, the hearings extended over a period of more than four months and were opposed by many parties who were adequately represented by counsel and aided by the testimony of expert witnesses. In addition to this testimony, the Commission has its own staff and the records which the law requires it to keep to assist it in reaching decisions in fixing rates.

There is no showing in the complaint to indicate that a different conclusion would have been reached by the Commission if the plaintiff had not withdrawn its appearance. To decide that the plaintiff under its complaint could establish damages would be equivalent to deciding that damages could be proved by pure conjecture and speculation. It is a well settled rule of law that all damages must be susceptible of ascertainment with a reasonable degree of certainty, and that uncertain, contingent, or speculative damages cannot be recovered in any action *ex contractu* or *ex delicto*. Spence v. American Oil Co., 171 Va. 62, 197 S.E. 468, 118 A.L.R. 1120. Future or prospective damages are confined to such cases as the evidence makes it reasonably certain will result from the acts of the parties.

II. Is This Action a Collateral Attack Upon an Order of the South Carolina Public Service Commission, and Therefore Barred?

The plaintiff now makes a direct attack on the rate fixed by the Public Service Commission. It has applied to the Public Service Commission for relief and this relief has been denied by the Commission. The question now is, "Can the plaintiff also make a collateral attack on the decision of the Public Service Commission in this court?" The plaintiff has recognized the right of the South Carolina Public Serv-

ice Commission to change any rate that is in effect. On July 30, 1952 plaintiff did exercise this right to petition for a change of the lawful rate now in force on the ground that the rate was unjust and discriminatory. This, in my opinion, was the proper approach in the correct forum. If the plaintiff's petition had merit, then the Public Service Commission had the power and the duty to grant the relief sought, but the Commission has decided that the plaintiff's petition was without merit and has refused relief on the ground that the petition did not show a meritorious case for relief.

■ What the plaintiff is attempting to do here is this: It is being charged a rate fixed by the Public Service Commission which is not satisfactory to it. The procedure which is provided by law to have the rate changed is clearly set forth in Title 24 of the 1952 Code of Laws of South Carolina—a hearing before the South Carolina Public Service Commission. The plaintiff has admitted in the course of these hearings that it did commence a proceeding before the Commission and that the Commission refused to alter the rates. The proper procedure for the plaintiff to follow after this adverse decision of the Public Service Commission was to seek a review in the South Carolina courts. The South Carolina courts have the right, if they are not satisfied with the findings of the Commission, to send the case back for further consideration, but the courts do not have the right when they review the rate orders of the Commission, to fix a rate. The courts only have the right to affirm the order of the Commission or remand the case. *The courts do not have the right to make rates.* This is a legislative function which is either exercised directly by the Legislature itself or by some subordinate body which has been set up by the Legislature to whom the power of fixing rates has been delegated. The effect of this action in this court, if it succeeds, would be to have the court fix a rate for the plaintiff, and this the federal courts cannot under any circumstances do because this is a function which is clearly reserved to the State Legislature or to a subordinate body created for this

purpose, and it is not one which is conferred upon the federal courts by the Constitution. Central Kentucky Natural Gas Co. v. Railroad Commission, 290 U.S. 264, 54 S.Ct. 154, 78 L.Ed. 307; Pacific Gas & Electric Co. v. City and County of San Francisco, 265 U.S. 403, 44 S.Ct. 537, 68 L.Ed. 1075.

The attack which is now being made upon the rates of the Public Service Commission could not have been made even in the state court because the state court does not have any rate-making power, and the statute expressly provides a remedy for parties who are disappointed by the decision of the Public Service Commission.

■ The case of Deweese v. Smith, 8 Cir., 106 F. 438, 66 L.R.A. 971, affirmed 187 U.S. 637, 23 S.Ct. 845, 47 L.Ed. 344, holds that decisions of quasi judicial tribunals acting within their jurisdiction are impervious to collateral attacks and open to avoidance by a court only in a direct attack on the ground of clear error of law, fraud, or mistake. In 49 C.J.S. Judgments, § 408 (b) collateral attack is defined as an attempt to avoid, defeat or evade a judgment or deny its force and effect in some judicial proceeding not provided by law for the express purpose of reviewing it. If the action has an independent purpose and contemplates some other relief or result, the action is collateral.

■ Fraud is given as one of the grounds upon which collateral attacks may be made against a judgment. The type of fraud that will permit such collateral attack is that which is used in obtaining a judgment, or against the party for whom the judgment has been rendered, which prevents him from having an opportunity to present his case.

The case of Bryan v. Bryan, D.C., 109 F. Supp. 366, 368, cites with approval the case of United States v. Throckmorton, 98 U.S. 61, 25 L.Ed. 93, as follows:

"In United States v. Throckmorton, 98 U.S. 61, 25 L.Ed. 93, an excellent definition is given of extrinsic, as distinguished from intrinsic fraud, which may be used as the basis of setting aside a judgment. This statement reads as follows:

" ' * * * Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side,— these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and fair hearing.' "

▌ At first glance it would appear that the rule stated above would permit the collateral attack because it is alleged in the complaint that the plaintiff was prevented from fully exhibiting its case by fraud and deceit which were practiced on it by the defendant in that it was prevented from appearing before the Public Service Commission. It is my opinion, however, that since the laws of South Carolina permit the plaintiff in such cases as this to apply to the Public Service Commission for proper relief at any time, and since the records show that the plaintiff did actually apply to the Public Service Commission for relief in accordance with the South Carolina law, and that this relief was denied, this case must be construed as a collateral attack upon the denial of the Public Service Commission to fix the rates which the plaintiff applied for after the general rates were put into effect.

The plaintiff in its subsequent application to the Public Service Commission had the right to present all the facts which would be decided in the instant case, as to the rate being an improper or unlawful rate, and the Public Service Commission has ruled adversely to it. It is quite clear to me, therefore, that this is not one of the cases where a collateral attack can be made against the judgment of the Public Service Commission.

III. Is the Action Barred as a Result of the Statute of Frauds?

▌ I think that the action is barred by the Statute of Frauds. The Statute of Frauds is a complete defense to a claim for damages that the defendant has breached an oral contract that could not be performed within the space of a year. In the instant case it is admitted that the contract could not have been performed within the space of a year. It was an oral contract, if there was a contract at all, which extended over a period of eight or nine years. As stated in 37 C.J.S. Frauds, Statute of, § 224: "An oral contract, within the statute, cannot be made the basis of an action for damages for its breach; nor, ordinarily, can any other action be maintained which requires proof of such contract to sustain the cause of action."

In the instant case the plaintiff can have no cause of action and no basis for damage unless the contract which could not be performed in the space of a year is used as a basis of proof of the alleged fraud.

▌ In 37 C.J.S. Frauds, Statute of, § 217, at page 714, we find this: "A mere failure or refusal to perform an oral contract, within the statute, is not such fraud, within the meaning of this rule, as will take the case out of the operation of the statute, and this is ordinarily true even though the other party has changed his position to his injury." The Statute of Frauds applies to a contract which cannot be performed within one year. S.C.Code of Laws 1952, Sec. 11–101; Rowland & Sons v. Bock, 150 S.C. 490, 148 S.E. 549, 27 A.L.R. 664; Florence Printing Co. v. Parnell, 178 S.C. 119, 182 S.E. 313.

The plaintiff has cited the case of Sachs v. Blewett, 206 Ind. 151, 185 N.E. 856, 188 N.E. 674, 91 A.L.R. 1285. It is quite apparent that the plaintiff did not intend to cite this case because the decision is against the position which the plaintiff has taken. In the Sachs case, an oral bid at auction was involved. After the defendants had

made their bid they represented that they would pay the plaintiff $500 at their place of business on the afternoon of the auction. It appears that they had no intention of doing this, but the plaintiff relied on the representation and consented to wait for the money. In the Sachs case, the sale was of real estate, which clearly came within the Statute of Frauds and was held by the court to be within the Statute of Frauds. It was alleged that the defendant attended the auction for the purpose of blocking the sale of the said property, and to make fraudulent bids therefor in order to prevent the sale to any honest buyer; that the defendants knew that the bid was fraudulent but that the plaintiff relied on the bid and on the defendants' promise to make a down payment of $500 later in the day.

The court held that a fraudulent intent alone is not actionable. At page 158 of 206 Ind., at page 859 of 185 N.E., at page 1290 of 91 A.L.R. of the Sachs case, the court said:

"This was the failure of the appellants to carry out their contract to purchase the real estate which caused the damage. The damage would have resulted whether the appellants' failure was due to an honest inability to comply or a mischievous preconceived design not to do so. But the law did not require the appellants to carry out their agreement, and fraud cannot be predicated upon a failure to do that which there is no legal obligation to do.

"An intention not to do that which the law does not require to be done, is not illegal, and such a negative intention cannot be the basis of an action for fraud unless there is also involved the breach of some other duty. It is not alleged that the appellants owed any duty to the appellee except such as was predicated upon their unenforceable oral contract.

"A person is presumed to intend what is ordinarily and reasonably implied by his agreement. If the appellants' contract to buy had been in writing, they would be responsible in damages for its breach, regardless of their good or bad intention at the time it was made. But the action would arise out of the contract and not in tort.

Since the contract was not in writing, the breach of it cannot be made the basis of an action, and the fact that at the time it was made they did not intend to carry it out makes their liability for the breach no greater than if they had intended to comply with it."

■ There appears to be no decision by the Supreme Court of South Carolina on this question, but a review of the cases involving fraud leads me to the conclusion that the South Carolina rule is similar to that of Indiana. I think that our rule is that actionable fraud cannot be predicated upon a promise to do something in the future although there may be no intention of fulfilling the promise. There are, and should be, exceptions to this general rule. Where there is a relationship of trust or confidence between the parties the rule does not apply. For instance, if an old, enfeebled man who is incompetent to transact any business relies upon his relatives who have shown an interest in and good will toward him, deeds his property to these relatives upon their agreement to furnish him a home and care for him during the remainder of his life and they fail to do so, the rule certainly should not apply. Under such circumstances there would be a relationship of trust and confidence between the parties and a conveyance should therefore be set aside on the ground of fraud.

In the instant case, the suit is for fraud and deceit, but the measure of damages is exactly what would be recovered if the oral contract which is set out in the complaint were an enforceable contract. The plaintiff alleges that it has been damaged to the extent of $200,000, or $25,000 a year. Plaintiff's counsel stated in his argument that the difference in the rates to be charged under the oral contract which it claims was fraudulent is $25,000 a year. In order for the plaintiff to prove its damages for fraud and deceit it must rely on this oral contract which it admits is not enforceable.

To recognize the position of the plaintiff in this case would effect a "northwest passage around the Statute of Frauds". The plaintiff's action is predicated upon de-

fendant's promise as such and it is relying upon the fraudulent character of the promise to take it out of the Statute of Frauds. In my opinion, this would in substance effect a "northwest passage around the Statute of Frauds". The full prohibitive force of the Statute of Frauds is directed against the enforcement of oral promises and there is nothing in the policy or provisions of the Statute upon which to base a distinction between good and bad faith promises.

For the foregoing reasons, the complaint is hereby dismissed.