# Richmond

## JOHN MARKS V. FRANK D. ORE.

January 12, 1948.

Record No. 3275.

Present, All the Justices.

The opinion states the case.

*Caskie, Frost & Watts*, for the plaintiff in error.

*Easley & Hoge*, for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

Frank D. Ore instituted this proceeding against John Marks, by notice of motion, to recover damages for personal injuries and property loss he sustained in a collision between an automobile operated by the plaintiff and a truck owned by the defendant. There was a verdict and judgment for the plaintiff for $2500. The defendant asks that this judgment be reversed and set aside on two grounds,— first, because it was contrary to the law and the evidence, and, second, because of misdirection of the jury by the court.

The collision between the car and the truck occurred about 12:15 a. m., on the morning of May 5, 1946, a short distance south of the corporate limits of the city of Lynchburg, Virginia, on U. S. Route No. 29. This highway is hard surfaced and straight, 30 feet wide, divided into three lanes by broken white lines, and slightly downgrade as one proceeds in a southerly direction from Lynchburg.

Rain had fallen during the entire day of May 4th, and for several days prior thereto. The road and adjoining land at and near the scene of the collision were wet and muddy. The weather was foggy and very thick in spots.

A carnival show, owned and operated by the defendant, had been located on a lot or tract of land east of the highway. For several hours prior to the accident, properties of the show were being loaded on trucks, and as each truck was loaded, it was pulled by a caterpillar tractor from the muddy field and placed, that is, parked, on the west side of the highway, headed in a southerly direction, one behind the other. The last motor equipment placed in line was a tractor and a loaded trailer. The trailer was 40 feet in length, 8 feet wide, and equipped with a stake body. The stakes were 5 feet high and placed on the sides and rear about 2 feet apart. The tractor was equipped with two headlamps and the trailer had two clearance lamps on the front and two clearance lamps and a tail lamp on the rear. The clearance lamps were placed on each corner of the body.

The evidence of the plaintiff and that of the defendant as to how the accident occurred is in sharp conflict on almost all material points. In view of the verdict of the jury, the evidence stated in the light most favorable to the plaintiff may be summarized as follows:

The plaintiff, 25 years of age, lived with his parents on Route No. 29, about 4 miles south of Lynchburg. He finished his work at a filling station about 9:00 p. m., on the night of May 4th. Later he escorted a young lady to a dance hall, driving his new Chevrolet automobile. After some time at the dance hall, he drove around with the young lady and then took her to her home in Lynchburg. He left her house about midnight, and headed his car towards his home, travelling southwardly over Route No. 29. Neither he nor his companion had drunk anything intoxicating. He knew that the defendant had been conducting a carnival on the east side of Route No. 29, a short distance south of Lynchburg; but he did not know that it was moving its

equipment that night. His car was in first class condition, both as to brakes and headlights.

Plaintiff testified that he was travelling at a speed of about 30 or 35 miles per hour, in his proper lane, and keeping a careful lookout with his bright headlights on. As he approached the location of the parked trucks, the fog became thicker and dispersed the beam from his headlights. There were no flares or other signals placed on the highway warning him of the trucks. There were no lights of any kind on the truck at the end of the line of trucks. When he was about 50 feet or less from that truck, it suddenly showed up in the beam of his headlights, "in the right-hand lane of the highway," directly in his line of travel. As soon as he saw it, he "applied the brakes and cut the wheels to the left, but the road being muddy caused it to be slippery, and the brakes didn't do much good. The car just skidded." He made "an effort to go around the left side of the truck, but was too close on it and couldn't get by." Because of the fog, he was unable to see the mud, which had accumulated on the road by reason of the weather and the movement of defendant's trucks.

As a result of the collision, plaintiff's automobile was almost completely wrecked from its front portion to the front seat. Ore was thrown out of its right side and seriously injured. He was knocked unconscious and remained so until after he was taken to a hospital. While lying on the ground unconscious, he lost a wrist watch and a billfold containing $385. The empty billfold was found the following morning in the mud on the land where the defendant's employees were engaged in removing 35 of his trucks.

A witness, who arrived at the scene immediately after the accident, testified that one of the dual wheels of the truck involved was a little over on the left-hand side of the road in the center lane of the highway; that there were no flares in the road; no lights of any kind on the truck; that it was dark and foggy; and that at the point where the truck was parked the visibility was not over 50 feet. This witness

said that an employee in charge of the movement of the trucks then began calling out, "Get them flares out; get them flares out."

Several other witnesses testified that the plaintiff showed no signs of having partaken of intoxicating drinks.

On the part of the defendant, the following evidence was offered:

W. W. Rowan, an employee of the defendant, in charge of placing the trucks on the highway, said that a caterpillar tractor was used to pull the trucks, about 35 of them, to the highway because of the wet condition of the adjacent land; that they were then parked on about 3 or 4 feet of the hard surface of the highway in the west lane, headed south; that they were not placed wholly on the shoulder of the road because of its soft and muddy condition; that the headlights of the tractor and the parking and tail lights of the trailer involved in the accident were burning; that at the scene of the accident 23 flares were placed about 20 to 30 feet apart on the white line dividing the west lane from the center lane of the road; that the visibility was so good he could see about a quarter of a mile; that he had placed a man with a flashlight about 400 feet north of the point of the collision to direct traffic; that the plaintiff, as he approached the scene, drove his car from side to side of the road, finally turning it to the west and crashing into the truck; and that the plaintiff appeared to him to be drunk.

Another employee of the defendant, who did not see the accident, corroborated the above witness as to the location of the truck and the burning of its lights. He also said that he saw flares placed up and down the highway when the truck was parked.

It appeared from the evidence of the defendant's witnesses that the trucks were placed, as a matter of convenience, on the road in the manner stated, to be serviced and later moved as a convoy to the next location of the carnival. There was evidence that the trucks could have been serviced at a near-by service station and that some of

them could have been parked there while others proceeded to their destination.

A sergeant of the State police, who came up after the accident, said he noticed that the left clearance light on the left rear of the truck and the tail light were damaged, and the right clearance light and headlights were burning; but he did not know whether they were burning at the time of the collision. He saw the plaintiff in the hospital and thought he detected the odor of alcohol on his breath.

The credibility of the witnesses was a matter solely for the jury. The jury rejected the evidence of the defendant and based its verdict on the evidence of the plaintiff. The plaintiff's version of the accident was reasonable and credible. On some material points, it was corroborated by other witnesses. If true, it showed that the defendant was guilty of a gross and flagrant violation of law and the common rules of safety. If true, the plaintiff was, while driving carefully, confronted by a sudden emergency created solely by the negligent act of the defendant. By reason of the fog, the failure of the defendant to provide proper lights, and the condition of the road, the plaintiff was unable to take effective steps to avoid the collision. According to his testimony, he kept a proper lookout, saw the truck as soon as it became visible, immediately applied the brakes and turned to his left, in order to avoid the collision. He had the right to assume that the highway was free from unlawful obstructions. Whether, after he discovered his peril, he did what an ordinary, reasonable man would have done under the circumstances was a jury question.

We frequently have said, in automobile collision cases, that the verdict of a jury, fortified by the approval of the trial court, where there is evidence to support the verdict, settles all questions of fact involving negligence and contributory negligence. *Temple* v. *Ellington*, 177 Va. 134, 12 S. E. (2d) 826; *Yellow Cab Corp.* v. *Henderson*, 178 Va. 207, 16 S. E. (2d) 389; *Orndorff* v. *Howell*, 181 Va. 383, 25 S. E. (2d) 327.

In *Virginia Stage Lines* v. *Duff*, 185 Va. 592, 39 S. E. (2d) 634, we said:

"In determining whether to sustain or set aside a verdict approved by the trial court, this court must ascertain whether the verdict is plainly wrong or without evidence to support it. The verdict settles all conflicts in the testimony. The successful litigant is entitled to have all reasonable inferences drawn in his favor. If, upon this view of the evidence, reasonable men may differ as to the conclusion to be drawn, the finding of the jury cannot be disturbed although the court, if sitting as a jury, might have reached a different conclusion."

The defendant relies upon the principles stated in *Penoso* v. *D. Pender Groc. Co.*, 177 Va. 245, 13 S. E. (2d) 310; and *Harris Motor Lines* v. *Green*, 184 Va. 984, 37 S. E. (2d) 4. The decisive facts of those cases are entirely different from the controlling facts of the case at bar.

In *Penoso* v. *D. Pender Groc. Co.*, *supra*, the evidence led to the inescapable conclusion that the plaintiff was guilty of contributory negligence when she drove into a highway intersection without keeping a proper lookout.

In *Harris Motor Lines* v. *Green*, *supra*, a jury found that in a collision between two trucks, the operators of both trucks were negligent, and that since the negligence of each continued up to the very moment of the collision, both were guilty of continuous and concurring negligence.

The court, at the request of the plaintiff, gave four instructions, numbered 1, 2, 3, and 4. Only number 3 was a finding instruction, and a finding for the plaintiff was therein conditioned, upon the absence of negligence on his part.

The defendant requested six instructions, numbered A, B, C, D, E, and F, and the court granted all of them except A.

Instruction B defined negligence. Instruction C dealt with the doctrine of the last clear chance.

Instruction D enumerated plaintiff's duties as to control, lookout, and speed, and told the jury that if they believed from the evidence (not from a preponderance of the evi-

dence) the plaintiff failed to comply with any of those duties, "and that such failure proximately contributed to the accident, then he cannot recover and you must find for the defendant, John Marks."

Instruction E told the jury that "If you believe from the evidence that the accident was caused by the concurring negligence of both John Marks and Frank D. Ore, then you must find for the defendant, John Marks, and this is so even though you may believe that John Marks was more negligent than Frank D. Ore."

In instruction F the jury was told that if Ore was driving while under the influence of liquor to such an extent as to affect the operation of his car, that was negligence, and if they further believed "that this negligence proximately contributed to the accident, you must find for the defendant, John Marks."

Instructions D, E, and F were explicit, clear, and peremptory as to the effect of plaintiff's contributory negligence. They emphasized that ground of the defense.

Instruction A, as requested, read:

"The Court instructs the jury that the burden of proof is on the plaintiff, Frank D. Ore, to prove his case in every essential particular by a preponderance of the evidence. The mere happening of an accident places no responsibility on anyone and the said *Frank D. Ore can only recover from the defendant, John Marks, by proving by a preponderance of the evidence that the said Marks was guilty of negligence as charged in the Notice of Motion, and that the said Frank D. Ore was not guilty of any negligence himself, which contributed to the accident."* (Italics supplied).

As offered, this instruction was clearly erroneous insofar as it told the jury that the plaintiff could not recover unless he proved "by a preponderance of the evidence" that "he was not guilty of any negligence himself, which contributed to the accident." By reason of this vice, instruction A was modified by the court of its own motion, and as modified was granted as instruction A-1, reading as follows:

"The Court instructs the jury that the burden of proof

is on the plaintiff, Frank D. Ore, to prove his case in every essential particular by a preponderance of the evidence. The mere happening of an accident places no responsibility on anyone and the said Frank D. Ore can only recover from the defendant, John Marks, by proving by a preponderance of the evidence that the said Marks was guilty of negligence proximately contributing to the accident and injuries as charged in the Notice of Motion."

The defendant objected to instruction A-1 on the ground that it failed to say the plaintiff must himself be free of negligence before he was entitled to a recovery.

The basis for the defendant's objection is that instruction A-1 was a finding instruction, and it, therefore, should have stated a complete case and embraced all elements necessary to support a verdict.

We have repeatedly held in this jurisdiction that a finding instruction is erroneous, which ignores the defense of contributory negligence, if there be evidence of such negligence, and that the error cannot be cured by other instructions properly dealing with that defense. *Virginia, etc., R. Co.* v. *Skinner,* 117 Va. 851, 86 S. E. 131; *Thomas* v. *Snow,* 162 Va. 654, 174 S. E. 837; *West* v. *L. Bromm Baking Co.,* 166 Va. 530, 186 S. E. 291; and *Outlaw* v. *Pearce,* 176 Va. 458, 11 S. E. (2d) 600.

Instruction A-1 is not, however, a finding or peremptory instruction as contended by the defendant. It is an instruction on the burden of proof resting on the plaintiff. It told the jury that the plaintiff was not entitled to recover unless he proved the negligence of the defendant by a preponderance of the evidence. Its latter clause was of a negative nature rather than positive. It did not, in any sense, deal with the defense of contributory negligence or the burden on the defendant of proving such negligence, nor did it direct a finding in favor of the plaintiff. Though subject to criticism as to form and manner of recital, it was fairly accurate on the principle of law involved. In the light of the clear, positive, and direct instruction covering the defense of contributory negligence, given at the de-

fendant's request, and included in plaintiff's instruction number 3, we do not see how the jury could have misconstrued instruction A-1 to defendant's prejudice.

On the whole record, we are of opinion that the defendant has had a fair and impartial trial upon the merits of the case. Accordingly, the judgment for the plaintiff is affirmed.

*Affirmed.*