Robert L. Kidd and Elmer Ray Taylor v. Carl W. Little.

March 9, 1953.

Record No. 4048.

Present, Eggleston, Miller, Smith, Whittle, JJ.

The opinion states the case.

*Rixey and Rixey,* for plaintiffs in error.

*Shapero and Shapero,* for defendant in error.

Miller, J., delivered the opinion of the court.

Carl W. Little was severely injured on June 21, 1951, about six o'clock p.m. when a gasoline-powered motor scooter that he was operating northwardly along Granby street in the city of

Norfolk collided with the rear of a panel-bodied truck owned by Robert L. Kidd and operated by his employee, Elmer Ray Taylor. Little obtained a verdict for $30,000 against both Kidd and Taylor, and they now seek reversal of the judgment entered thereon.

Briefly stated, defendants' assignments of error are: Taylor was not guilty of any negligence that proximately caused the accident; plaintiff's negligence solely caused or efficiently contributed to the collision; the court misdirected the jury; and the verdict is excessive. These assignments require that the salient parts of the evidence be stated.

The Cushman motor scooter that plaintiff was operating is described as resembling a miniature motorcycle. Its two wheels, front and rear, are about eighteen inches high. Between these wheels, swung rather close to the surface of the road, is a small platform and somewhat elevated above the platform is a box-like seat about eighteen inches wide. The occupant of the vehicle can therefore sit with his feet resting on the platform and operate the scooter with the appliances provided for that purpose.

Granby street extends in a northerly and southerly direction, and where the accident occurred, there is a double white line down its center which separates the northbound and southbound traffic lanes. The eastern half of the street is sufficiently wide for three lanes of traffic and consists of the lane next to the curb used for parking, and two lanes for northbound moving traffic. In their testimony the witnesses referred to the two last mentioned lanes as the right and left lanes respectively, and they will be hereinafter so designated. The west side of Granby street is similarly divided for traffic proceeding in a southerly direction. Forty-second street enters Granby street from the east but does not cross, and on the west side of Granby street opposite the entrance of Forty-second street is located Buzzy's Drive-In Restaurant.

The evidence discloses that there was much traffic on the street when the accident happened, the vehicles moving at moderate speed and in close proximity to each other.

Plaintiff had been proceeding northwardly along the left lane for some distance before his scooter collided with the rear of Taylor's truck when that vehicle stopped in the same lane about fifty feet south of the entrance to the restaurant.

No skid marks were found on the surface of the street, and it does not appear that either vehicle had been operated at an excessive speed immediately prior to the accident or that the scooter was being driven in excess of 15 miles per hour when it struck the standing truck.

Defendants contended, and Taylor testified, that his truck was in the left lane and had been proceding northwardly in that lane for about two blocks or more before the collision. He said that as he approached Forty-second street, the driver of a car in front of him, preparatory to turning left into Bazzy's Restaurant, gave "ample warning" of his intention to stop, and did stop, and that he, Taylor, gave a hand signal to traffic following him, but that he had to and did stop suddenly because of the standing vehicle ahead of him. He further said that his truck had been standing in the left lane about fifteen seconds before the scooter struck it.

The testimony of plaintiff and that of other witnesses was that as he approached Forty-second street, he was operating his scooter along the left lane at about 15 miles per hour and that defendant's truck was then being driven along the right lane at about the same speed and slightly ahead of him. They said that when the truck was slightly more than fifty feet south of the entrance to Buzzy's Restaurant, Taylor suddenly turned into the left lane in front of the scooter and then immediately stopped, and that these movements and operations, turning and stopping, were made without giving any signals whatever. Plaintiff does, however, admit that he saw the truck turn from the right lane into the left lane, and he says that he took his foot off the gas and slowed down his scooter but that the truck then suddenly stopped in front of him without signal, and he was unable to avoid striking it.

It does not appear from the testimony that anything required Taylor to make this turn from the right lane, nor is it clearly shown by the evidence offered by plaintiff just how far Taylor was in front of the scooter when he entered the left lane or when he stopped. Thus it cannot be said with certainty whether or not the acts of turning from one lane to the other without signal or stopping without signal (which latter signal Taylor may or may not have been able to give because of his proximity to the vehicle ahead of him) caused, or efficiently contributed to, the collision, or whether or not these two operations—turning and

stopping—both of which it is said were made suddenly and in rapid sequence, together constituted the proximate cause of the accident. Nor does the evidence conclusively establish whether or not plaintiff was guilty of contributory negligence in failing to avoid the collision after he saw the truck turn into the left lane. Different inferences may be reasonably drawn from the evidence.

The jury rejected defendants' theory of how the accident occurred, and when the evidence is considered in the light most favorable to plaintiff as it must now be, it is sufficient to prove that Taylor was guilty of negligence that proximately caused the accident, and it does not necessarily establish contributory negligence on the part of plaintiff.

What was said in *Virginia Electric & Power Co.* v. *Steinman,* 177 Va. 468, 473, 14 S. E. (2d) 313, is appropriate to the evidence in this case.

"It is well settled, and this court has said so time and again, that the question of negligence, indeed all kinds of negligence— primary, contributory, continuous and concurring—is one for the jury to determine. They are questions of fact, and the jury is the trier of such questions. It is only when the issue is one about which reasonable persons cannot differ—the question so plain in the meaning and interpretation that should be given to it—that no doubt is admitted of its legal significance and effect, that it becomes a question of law for the courts to determine."

The issues of whether or not Taylor was guilty of negligence that proximately caused the accident and whether or not plaintiff was guilty of negligence that efficiently contributed to the mishap were clearly questions to be decided by the jury upon proper instructions from the court.

Instructions P-1 and P-2, given over the objections of defendants, and Instruction 3-D, refused defendants, have to do with the duties imposed by sections 46-233 and 46-234, Code of 1950, upon a driver who intends to stop, turn or partly turn his vehicle from a direct line when such a movement may affect the operation of another vehicle. If Taylor violated these sections, or either of them, and that violation solely caused the collision, then he is expressly made liable by the provisions of section 8-646.3, Code of 1950. The three instructions follow:

## "P-1

"The Court instructs the jury that it was the duty of the driver of defendants' truck to keep and observe a proper lookout and to give adequate and timely signals of intention to turn, partly turn, slow down, or stop, and if you believe from the evidence that the driver of defendants' truck failed to observe any one or more of said duties, and such failure was the proximate cause of the injuries to the plaintiff, and that plaintiff was not guilty of contributory negligence, the verdict should be in favor of the plaintiff against the defendants."

## "P-2

"The Court instructs the jury that every driver who intends to start, stop, turn or partly turn, from a direct line shall first use reasonable care to see that such movement can be made in safety and whenever the operator of any other vehicle may be affected by such movement, shall give a signal plainly visible to the driver of such other vehicle, of his intention to make such movement. Whenever the signal is given by means of the hand and arm the driver shall indicate his intention to start, stop, turn or partly turn by extending the hand and arm from and beyond the left side of the vehicle in the manner following: (1) For left turn or pull to the left, the arm shall be extended in a horizontal position straight from the level with the shoulder; (2) For right turn or to pull to the right, the arm shall be extended upward; (3) For slowing down or to stop, the arm shall be extended downward.

"Such signals shall be given continuously for a distance of at least fifty feet before slowing down, stopping, turning, partly turning or materially altering the course of the vehicle."

## "3-D

"The Court instructs the Jury that if you believe from the evidence that the defendant's vehicle was proceeding North on Granby street in line of traffic, and that a vehicle in front of him stopped for the purpose of making a left turn, then the defendant had a right to stop behind him and was not guilty of negligence in so doing.

"And the Court further instructs the Jury that if you believe from the evidence that the stop was made by the defendant

driver under the above circumstances then the usual signal of intention to stop was not required of the defendant driver. All that was required of the defendant was that he exercise reasonable care under all the circumstances.''

Defendants say that instructions P-1 and P-2 were erroneous in that they required Taylor to give the stop signal for fifty feet before bringing his truck to a standstill even though, without negligence on his part, he was forced to stop within a lesser distance to avoid a vehicle which had stopped in front of him.

The evidence, as we have said, does not conclusively establish that the collision was efficiently contributed to by Taylor's turning his truck without signal from the right to the left lane, for plaintiff admits that he saw that movement and slowed down his scooter. The mishap may or may not have been contributed to by Taylor's movement to the left lane. Even though it was not contributed to by that movement, the jury still had to determine whether or not the collision was caused by the stopping of the truck in the left lane, and if so, whether or not Taylor had an opportunity to comply with the statutes before he had to bring his vehicle to a standstill.

The fact that defendant, Taylor, has testified to a state of facts, and he and defendant, Kidd, advanced a theory, both of which are definitely at odds with the facts and theory relied upon by plaintiff, does not preclude them from the benefits afforded them under a fair interpretation and application of the statutes. If, under the evidence offered by plaintiff, defendants may not have violated the statutes, then they are not precluded from having the jury so find. And in the instructions to the jury, the statutes must be correctly interpreted and applied.

''A defendant is entitled to have instructions based on the testimony of his own witnesses or his adversary's witnesses or the testimony of his adversary even though such testimony be at variance with his own. * * *

''A defendant testifying in his own behalf is not so bound by his own admissions as to be precluded from availing himself of defenses brought out in the evidence of his adversary. A plaintiff must recover, if at all, on the strength of his own case not on the weakness or falsity of the defense. * * *'' *Brubaker* v. *Bidstrup,* 163 Mo. App. 646, 653, 655, 147 S. W. 541.

Instructions P-1 and P-2 did not make it clear to the jury

that if Taylor, without negligence on his part, was forced by the halting of another vehicle to stop before he could give the signal contemplated in the statute, then he was not guilty of negligence solely because of such failure. A statement to that effect should have been incorporated in the instructions, and its omission was prejudicial.

In argument counsel for defendants conceded that instruction 3-D was erroneous and properly refused, and with that we agree. The provision intended to be embodied in that instruction, but which was insufficiently stated, was similar to that which defendants contended for in instructions P-1 and P-2. Yet as the phraseology of the instruction was decidedly faulty, its refusal was justified.

Our conclusions on the instructions render it unnecessary to consider the assignment having to do with the quantum of damages.

For the reasons stated the judgment is reversed, and the case remanded for a new trial.

*Reversed and remanded.*