## Richmond

BAMMA BATES, ADMINISTRATRIX, ETC. v. EMORY A. THOMPSON, SHERIFF, ETC.

January 26, 1959.

Record No. 4849.

Present, All the Justices.

The opinion states the case.

*T. Warren Messick* and *R. B. Stephenson, Jr.* (*R. B. Stephenson,* on brief), for the plaintiff in error.

*W. H. Jolly* (*R. S. Kime,* on brief), for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

Ellis G. Bates was riding in a car owned and operated by his brother, Gordon Bates, when an accident occurred in which both

were killed. Bamma Bates, administratrix of the estate of Ellis Bates, sued Thompson, the administrator of Gordon Bates, alleging gross negligence in the operation of the automobile. The court found as a matter of law that the car was being operated in a grossly negligent manner at the time of the accident. To this finding no cross error was assigned.

The jury returned a verdict in favor of the plaintiff in the sum of $25,000. On motion of the defendant the court set the verdict aside on the ground that Ellis Bates was guilty of contributory negligence as a matter of law and entered judgment for the defendant. We granted plaintiff a writ of error.

The record before us presents a single question, *i.e.*, does the evidence establish that Ellis Bates was guilty of contributory negligence as a matter of law.

The collision occurred on November 2, 1955, at about 8:00 p.m., in Alleghany county, approximately four miles west of Covington. The two automobiles involved, a 1947 Cadillac driven by one Wilkerson and a 1955 Buick owned and operated by Gordon Bates, crashed head-on. Both Gordon and Ellis Bates were killed instantly and Wilkerson died a few days later.

The Wilkerson automobile was traveling east and the Bates car was traveling west. The collision occurred entirely on Wilkerson's side of the highway. It is unnecessary to relate the circumstances relative to the gross negligence of Gordon Bates. Suffice it to say that gross negligence on his part was established by the evidence and, as aforesaid, no cross error was assigned to the action of the court in so instructing the jury.

The defendant contended that the evidence established as a matter of law: that Gordon Bates was intoxicated; that Ellis knew or should have known of such intoxication; and that Ellis was guilty of contributory negligence when he continued to ride with his brother under the circumstances.

The evidence relied on by the defendant in an effort to show intoxication and the contributory negligence of Ellis discloses that Gordon (26 years of age) and Ellis (18 years of age), were employed on separate jobs in the northern part of Virginia. They were en route home to visit their parents who resided 14 miles west of Covington in the southwestern part of the State.

Gordon picked up Ellis at Fort Belvoir and proceeded down U.S. Route 11. Approximately 60 miles from the scene of the

collision they were stopped by Trooper Talbert who testified that he gave Gordon a speeding ticket near Fairfield in Rockbridge county at about 6:10 p.m.; that Gordon was driving his automobile slightly over 70 miles per hour in a 55-mile zone; that the highway at that point was dual, four-lane, and comparatively straight; that although he smelled the odor of alcohol on Gordon's breath he did not believe him to be under the influence of intoxicants, and that Ellis had had nothing to drink.

Trooper Talbert testified:

"Q. * * * You are a State Trooper—if he was under the influence of intoxicants, you would have arrested him; no question about that, is there? You knew you saw nothing about him to indicate that he was under the influence of intoxicants in order to arrest him for operating the car under the influence of intoxicants, did you?

"A. That's correct."

Upon signing and receiving the ticket from Trooper Talbert Gordon drove to the police station in Lexington which was approximately nine miles distant. He went there for the purpose of posting bond. Wilhelm, a clerk at police headquarters, testified that he smelled the odor of alcohol on Gordon's breath and that he appeared unsteady on his feet; that when he would not permit him to post bond he stated "someone will catch hell for this," and left the office. Ellis was not with his brother in the police station.

Upon leaving Lexington, the brothers drove to Covington, some 50 miles distant, where Officer Alvin Vance of the Covington Police Department stopped the Bates automobile because it was "making a crying noise". This officer was the last person to see either of the Bates brothers alive and his interview with them took place just a few minutes before the accident occurred. On cross-examination he testified:

"Q. Mr. Vance, if I understand you, sir, you tell the jury that you saw nothing out of the way about the appearance of Gordon Bates at this time?

"A. That's right, sir.

"Q. Seemed perfectly normal to you?

"A. Yes, sir; except that I detected alcohol on his breath.

"Q. Alcohol on his breath. But, other than that, he appeared normal?

"A. Yes, sir.

"Q. If I understand it, it was simply a screeching noise that you detected there and maybe a little racing of the engine?

"A. Yes, sir."

The distance from where Vance interviewed Gordon Bates to the point of accident was a fraction less than four miles. Vance testified that Gordon, after the interview, drove off in a hurry and that he would have arrested him if he had had the opportunity. A few minutes later the accident occurred.

Unquestionably, when Gordon Bates left Officer Vance he was driving in a reckless manner. But within the few minutes that elapsed between the interview and the time of the collision there is no evidence to show that Ellis had an opportunity to leave his brother's car.

At the instance of defendant the court gave Instruction No. D, as follows:

"The court instructs the jury that if you believe from the evidence in the case that as Gordon L. Bates and his brother, Ellis G. Bates, were proceeding from Fort Belvoir, Virginia, towards Covington, Gordon L. Bates commenced to drink intoxicating beverages and during the course of said drive operated his said automobile at an unreasonable and unlawful rate of speed, and was stopped and given a summons by State Trooper Talbert, in the vicinity of Lexington, and if you further believe that despite his getting a ticket, or summons, he continued to drink intoxicating beverages and to operate his automobile in a careless and reckless manner, and was again stopped in the City of Covington by Officer Vance and warned about the manner of his said operation of the Buick automobile, and if you further believe that during the happening of these events, and throughout the course of said drive, Ellis G. Bates was present and a passenger in said automobile, and had actual knowledge of the same and yet continued to ride therein, despite the fact that he had several opportunities to get out of said automobile, and if you still further believe that the proximate cause of the accident was the gross negligence of Gordon L. Bates, brought about by his drinking of intoxicating beverages which rendered him an unfit and unsafe driver, then the court tells you that Ellis G. Bates was guilty of contributory negligence, as a matter of law, in continuing to ride in said automobile, and your verdict should be for the defendant."

The giving of this instruction was objected to by the plaintiff on the ground that in a number of respects it was not supported by

the evidence; that it had not been shown that Gordon Bates was so intoxicated that his condition was apparent to observation and that this was necessary before Ellis Bates could be found guilty of contributory negligence; that "it is a finding instruction and singling out numbers of things that are not supported by any evidence at all."

In our view, it is not necessary for us to pass upon the correctness of this instruction; in any event it was most favorable to the defendant and in the face of it the jury found for the plaintiff.

At the instance of the plaintiff the court gave Instruction No. 4, as follows:

"The court instructs the jury that under the influence of intoxicants means as follows: 'Any person who has drunk enough alcoholic beverages to so affect his manner, disposition, speech, muscular movement, general appearance or behavior, as to be apparent to observation, shall be deemed to be intoxicated.'

"The court further instructs the jury that unless you believe from the evidence that Gordon Bates had drunk enough alcoholic beverages to so affect his manner, disposition, speech, muscular movement, general appearance or behavior as to be apparent to observation, then he would not be deemed to be under the influence of intoxicants while operating his automobile." *Gardner* v. *Commonwealth*, 195 Va. 945, 954, 81 S. E. 2d 614, 619; Code, § 4-2(14).

There was no cross error assigned to the giving of this instruction.

Here we have a situation where trained and experienced police officers had observed Gordon Bates and definitely stated that although he had the odor of alcohol on his breath he was not under the influence of intoxicants, and that had he appeared to have been, they would have arrested him. In the light of this evidence the jury had a right to find that intoxication, not being apparent to the officers, was not apparent to the eighteen-year-old brother.

Negligence, contributory negligence, and proximate cause are generally questions for the jury. *Spence* v. *American Oil Co.*, 171 Va. 62, 79, 197 S. E. 468; *Steele* v. *Crocker*, 191 Va. 873, 880, 62 S. E. 2d 850, 853; 118 A.L.R. 1120.

We have repeatedly held that if reasonable men may differ as to the conclusion of fact to be drawn from the evidence, or if the conclusion is dependent upon the weight to be given the testimony, a jury is the proper tribunal to decide the question. *Steele* v. *Crocker, supra*, 191 Va., at page 880.

We said in *Spence* v. *Miller*, 197 Va. 477, 479, 90 S. E. 131, 133:

"A much closer question is whether as a matter of law the plaintiff was guilty of contributory negligence. That depends upon whether reasonable men could differ as to the facts proved by the evidence and the fair inferences therefrom. The jury's verdict has settled the conflicts and the evidence must be considered in the light most favorable to the plaintiff. *Marks* v. *Ore*, 187 Va. 146, 152, 45 S. E. 2d 894, 896; *Kidd and Taylor* v. *Little*, 194 Va. 692, 695, 74 S. E. 2d 787, 789."

We held in *Yorke* v. *Maynard*, 173 Va. 183, 188, 3 S. E. 2d 366, 368, that although the driver had been drinking and the plaintiff guest had knowledge of this fact, still, if it should be found by the jury that the defendant was not so intoxicated as to render him a dangerous driver, the plaintiff would not be guilty of contributory negligence. See also *Yorke* v. *Cottle*, 173 Va. 372, 4 S. E. 2d 372; *Yorke* v. *Mason*, 173 Va. 379, 4 S. E. 2d 375.

Minutes before the last lap of this journey Officer Vance observed the condition of the driver and testified that he appeared to be normal. If this officer, within a matter of minutes before the accident, was unable to detect intoxication, surely reasonable men could differ as to the conclusion of fact to be drawn from the evidence, and the finding of the jury on such fact should not be disturbed.

For the reasons stated the judgment is reversed, the verdict of the jury is here reinstated and final judgment entered thereon.

*Reversed and final judgment.*

SPRATLEY and MILLER, JJ., dissenting.

SPRATLEY, J., dissenting.

Considering the undisputed facts in this case, the decision of the court seems to me to be unrealistic. It has placed undue emphasis on the question whether Gordon Bates was under the influence of intoxicants while operating his car, and has failed to give consideration to vital and important facts concerning the conduct of Gordon Bates and his brother, Ellis, regardless of whether Gordon had partaken of enough alcoholic beverages to affect his behavior.

The defendant's answer set out the following grounds of defense:

"That plaintiff's intestate was guilty of negligence which proximately caused or contributed to bring about the situation resulting in

his death, in that if Gordon Bates was the operator of the automobile in question, plaintiff's intestate continued to ride in the automobile in which he was subsequently killed after knowing that said automobile had been, and was being, driven in a reckless and dangerous manner and after ample opportunity had been offered plaintiff's intestate to leave the automobile, if he so chose, and still further, both occupants of the Bates automobile were engaged in drinking intoxicating beverages and each assumed the risk of riding with the other."

One does not have to be drunk, or under the influence of intoxicants, to operate a car in a careless and reckless manner. It is all too true that persons wholly free from such influence are often guilty of unlawful driving. Moreover, a small amount of intoxicants may be more dangerous for a driver in exciting his emotions and dulling his sense of responsibility than an amount sufficient to cause stupor.

In addition to the facts recited by the Court, I think that the following are of prime importance:

Ellis was 18 years of age. He had registered for military service under the U. S. Selective Service Act. He was intelligent and mature enough to leave home and obtain work. He had been employed for two or three months as a bellboy at the "Hunt Club," a hotel-motel near Washington, D. C. He was present in the car of his brother when he was halted 60 miles from the scene of its collision by Trooper Talbert for driving 70 miles per hour in a 50-mile zone. He and his brother then got out of the car, and talked with Talbert for several minutes while a summons for speeding was being prepared by the trooper.

Talbert said of Gordon that the "odor of intoxicants was definitely on his breath," and that he was "very talkative," especially about "personal difficulties with his family." Ellis heard the conversation between the officer and his brother, saw his brother given the summons to appear before a justice of the peace, and heard the officer warn Gordon that he should be more cautious in his driving, saying he had "no desire to have to clean him up off the highway." The officer further said that outside of being very talkative, Gordon "didn't give any indication to me of being *real* drunk, just the odor and the fact that he was very talkative." (Emphasis added.)

Gordon then drove to the police dispatcher's office in Lexington, where he met Andrew Wilhelm, a police clerk. Wilhelm said that

during his conversation with Gordon: "I was close enough to smell his breath, between the counter and me, and I did smell alcohol on his breath," and that "He was very unsteady on his feet." When bond was refused Gordon and he was told that he would have to return to Lexington for his trial, he said "Somebody is going to catch hell for this."

On leaving Lexington, Gordon drove to Covington. Officer Vance of the police department of Covington said that sometime shortly after 7:00 p. m., he observed Gordon's car coming up the street "making a rocking noise, up and down movements, and every time the car would rock up, there would be a slight crying of the tires." The officer was on foot and attempted to stop the car but it ran by him, but had to stop at a red light further on. Vance then caught up with the car, and checked Gordon's registration and driving permit. Said he: "I detected alcohol on his breath; but his appearance otherwise seemed almost normal. I gave the guy a warning and asked him what his excuse was for driving in that manner. Mr. Bates said: 'Well, this is my hometown. I have been in the Army for two or three years and am just getting home. You know how it is.' " Vance then warned him not to drive too fast and allowed him to proceed; and Gordon, after stopping for another red light, "apparently ignored what I had told him and he left there and his car was going at a high rate of speed, the tires crying all the way up to the bridge at Rosedale, heading west." On cross-examination, he said, referring to Gordon's car, "He had that Buick in the wind."

It might also be noted that H. R. Crush, a State Trooper, who examined the Bates car after the accident, said that he found "a broken whiskey bottle in it." Cecil Bates, the father of Gordon, said that he saw the broken whiskey bottle in the car a day or two after the accident, and that, "There was a strong odor of whiskey in the car."

Now, we have a situation where Ellis, sitting in the car beside his brother, smelled, or must have smelled the odor of alcohol on Gordon's breath two hours prior to the accident, and noted, or should have noted, that he had been twice stopped for operating his automobile in a careless and unlawful manner. It is conceded that Gordon was guilty of gross negligence and no person had a better opportunity to observe his conduct than Ellis. He saw and heard what took place between Gordon and two police officers. While he was not present in the office of the police clerk in Lexing-

ton, he was with his brother immediately before and after the latter went to that office. It is clear and undisputed that he had three opportunities to leave his brother's car; one at the time of the arrest by Trooper Talbert, again at Lexington, and the third time at Covington. His conduct in not leaving the car can be only explained by the assumption that he was anxious to go to his parents' home, and that accompanying his brother was the only feasible and available mode open to him. He was a voluntary passenger, however, and regardless of the actions of Gordon, he chose to remain in the car and to assume the risk and hazards inevitably connected with that course.

It is a reflection on the intelligence of Ellis to believe that he did not have sufficient mentality to observe and know the conduct and mood of his brother. It is conceded that Gordon was guilty of gross negligence, and the facts show that such negligence was begun more than two hours before the accident occurred. The evidence seems to me to establish the inescapable fact that Gordon operated his car in such a grossly careless and reckless manner that Ellis was bound to have observed it.

Whether or not Gordon was operating the car under the influence of intoxicants was a question merely incidental to the controlling issue, and is important only in the sense that it may furnish an explanation for his conduct, and have given additional notice of his condition to his brother. On that question the testimony of Trooper Talbert, Clerk Wilhelm, and Officer Vance testified, without contradiction, that Gordon had the odor of intoxicants on his breath; that he did not appear to be "real drunk," but was "very talkative;" that he was "very unsteady on his feet;" that he drove his car in such a noisy manner as to attract notice; and that his disposition was brusque and offensive, all of which tended to show that Gordon had "drunk enough alcoholic beverages to so affect his manner, disposition, speech, muscular movement, general appearance or behavior, as to be apparent to observation" that he was under the influence of intoxicants. Code, § 4-2 (14); *Gardner* v. *Commonwealth*, 195 Va. 945, 954, 81 S. E. 2d 614, 619.

One aware of peril must take reasonable precaution for his own safety. The law does not permit him to shut his eyes or ears to danger without assuming the consequences of his failure to exercise reasonable care.

It seems to me that the court has failed to properly consider the grounds of defense and to evaluate the evidence with the necessary

implications arising therefrom. The controlling issue is not whether Gordon Bates was guilty of operating a motor car while under the influence of intoxicants, or whether Ellis Bates knew Gordon was in that condition; but whether or not Ellis voluntarily remained in the car after he knew, or should have known, that Gordon was operating it in such a manner as to endanger the lives of its occupants and other persons lawfully on the highway.

I agree with the trial judge that the evidence clearly shows that Ellis Bates was guilty of contributory negligence as a matter of law, and I would, therefore, affirm the judgment of the trial court.

MILLER, J., joins in this dissent.