# Richmond

## NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA v. GEORGE L. BRUCE.

March 4, 1968.

Record No. 6569.

Present, Buchanan, Snead, I'Anson, Carrico, Gordon and Harrison, JJ.

*L. Paul Byrne* (*Robert H. Merhige, Jr.; Bremner, Merhige, Byrne, Montgomery and Baber*, on brief), for plaintiff in error.

*Marvin F. Cole* (*Cole and Phillips*, on brief), for defendant in error.

CARRICO, J., delivered the opinion of the court.

This writ of error, granted National Union Fire Insurance Company of Pittsburgh, Pennsylvania, brings under review a judgment based upon a jury verdict in the sum of $38,893.00 awarded George L. Bruce, the plaintiff, for the gross negligence of Donald F. Divers, the defendant. The defendant was an uninsured motorist, and the insurance company, the plaintiff's uninsured motorist carrier, appeared in the court below and participated in the trial. Morris W. Whitaker also was a party defendant in the trial court, and verdict and judgment were in his favor. He is not now before us.

The accident in which the plaintiff received the injuries for which he was awarded the judgment occurred at approximately 1 a.m. on September 6, 1964, near the intersection of Broad Street Road and Deep Run Road in Henrico County. The weather was clear, the night dark, and the road surfaces dry. Broad Street Road, or Route 250, is a two-lane highway approximately 30 feet wide, running east and west. Deep Run Road is narrow, runs north and south, and intersects Broad Street Road at a right angle. A stop sign controls traffic entering Broad Street Road from Deep Run Road. Approximately 460 feet west of the intersection is a hillcrest. The terrain from the hillcrest to the intersection is downgrade, and the visibility between the two points is unobstructed. The speed limit on Broad Street Road is 45 m.p.h.

On the night in question, Whitaker, accompanied by his wife and another couple, was proceeding southwardly in his automobile on Deep Run Road. When he arrived at Broad Street Road, he brought his vehicle to a stop, looked in both directions, and proceeded to make a left turn to travel in an easterly direction on the main highway.

The defendant, accompanied by the plaintiff, was driving at a speed of 45 m.p.h. in an easterly direction on Broad Street Road, going down the hill approaching Deep Run Road. When he was about halfway between the crest of the hill and the intersection, he saw the Whitaker automobile as it "was pulling into the road." He applied his brokes, skidded down the hill, and struck the other vehicle in the rear at a point east of the intersection. The Whitaker car was knocked into a ditch on the right side of the road, and the defendant's vehicle came to rest partly off the paved surface on the left side.

The dispute in the trial court revolved around whether the de-

fendant was operating his vehicle without lights at the time of the accident. The plaintiff had no recollection of how the accident occurred and so could give no testimony on the disputed point. He called the defendant as an adverse witness, and the latter testified that the lights were burning on his vehicle at the time of the accident.

The plaintiff then called Whitaker as an adverse witness. Whitaker testified that he looked in both directions before entering the intersection, saw "no traffic" from "either direction," and "didn't see any lights coming either way." He stated, "There was no doubt that I could see a light if it was coming down the hill."

The passengers in the Whitaker car, later called as witnesses on Whitaker's behalf, testified that they looked in both directions before the vehicle in which they were riding entered the intersection and that they saw no lights.

[1] The insurance company concedes that "if there was credible evidence to the effect that [the defendant] was driving down Route 250 at 1:00 o'clock a.m. without head lights burning, then there was sufficient evidence for the case to go to the jury on the issue of gross negligence." It says, however, that the testimony which tended to show that the defendant was driving without lights was negative in character and was "rendered valueless" by the positive statement of the defendant that his lights were burning. Thus, the insurance company argues, there was insufficient credible evidence to show that the defendant was driving without lights, and the case should not have gone to the jury.

The plaintiff, on the other hand, contends that the testimony of Whitaker and the occupants of his car was "credible, positive and unequivocal evidence that [the defendant] did not have his lights burning" and that such evidence was sufficient to take the case to the jury. But regardless of the question of headlights, the plaintiff argues, "there is ample evidence of gross negligence."

We will dispose first of the plaintiff's argument that there was sufficient evidence of gross negligence, independent of the testimony relating to the lack of headlights, to support the verdict.

If the evidence concerning the lights is ignored, we have here nothing more than a possible case of simple negligence on the part of the defendant. With the testimony about the lights removed from the record, it simply does not show that the defendant operated his vehicle with that utter disregard for the plaintiff's safety which is necessary to support a finding of gross negligence.

We are of opinion, however, that the issue relating to headlights was properly submitted to the jury.

It is true that "the positive testimony of a credible witness, who testifies that he saw or heard a particular thing at a particular time, ordinarily outweighs that of a number of other witnesses, equally credible, who, with the same opportunities, testify merely that they did not see or hear it." *Railway Company* v. *Barden*, 200 Va. 98, 102-103, 104 S. E. 2d 13, 16 (1958).

But that rule does not always apply where one witness testifies that he did not see that which another says did occur. If there is evidence that the one who denies a fact had good opportunity to see, and it is shown that he probably would have seen the matter if it had occurred, or it is shown that his attention was drawn to the situation where the fact was supposed to have existed, then his testimony is positive in character, and not negative.

In such a case, the testimony of the witness who says he did not see something occur creates a conflict with that of the one who testifies it did occur—a conflict to be left to the trier of fact for resolution by a determination of which witness is entitled to greater weight in the testimony he has given. *Railway Company* v. *Haley*, 156 Va. 350, 372, 157 S. E. 776, 783 (1931); *White* v. *Southern Ry. Co.*, 151 Va. 302, 311, 144 S. E. 424, 426 (1928).

The testimony of Whitaker and his passengers tended to show that from the position where their car was stopped at the edge of Broad Street Road, they could see to the crest of the hill approximately 460 feet west of the intersection; that they specifically looked to see if any traffic was approaching from the west; that they did not see any lights or any traffic coming from that direction; and that, in all probability, they would have seen the lights of the defendant's vehicle, had lights been burning.

We hold that the testimony of Whitaker and the occupants of his automobile was positive in character, constituting credible evidence sufficient to support a finding that the defendant was operating his vehicle at night without lights. This was the precise holding in *Staples* v. *Spence*, 179 Va. 359, 362-363, 19 S. E. 2d 69, 71 (1942), where the accident occurred in a manner almost identical with the one involved here. The testimony of two witnesses that they "saw no headlights approaching" was attacked as being negative and of no probative value. We said that the testimony was positive and "sufficient to sustain the allegation that defendant was operating his car at night without lights." Surprising though it may be, that case

was not cited to us by the plaintiff, but discovered by our own research.

[2] This brings us to the insurance company's contention that if the defendant was driving without lights, the plaintiff was guilty of contributory negligence in riding in an unlighted vehicle without warning of or protesting the lack of lights. Such contributory negligence, the insurance company says, was shown as a matter of law; but if not, it was a factual question which the trial court improperly refused to submit to the jury.

The plaintiff argues, however, that the defendant "is in no position to now claim that [the plaintiff] should have warned him that his lights were not burning because [the defendant] testified that his lights were burning." Seeking to invoke the rule of *Massie* v. *Firmstone*, 134 Va. 450, 114 S. E. 652 (1922), the plaintiff says that the defendant is bound by his testimony that his lights were burning and cannot rely upon Whitaker's testimony to the contrary to support the claim that the plaintiff was guilty of contributory negligence.

In *Massie* v. *Firmstone, supra,* we said:

" . . . No litigant can successfully ask a court or jury to believe that he has not told the truth. His statements of fact and the necessary inferences therefrom are binding upon him. He cannot be heard to ask that his case be made stronger than he makes it, where, as here, it depends upon facts within his own knowledge and as to which he has testified." 134 Va., at 462; 114 S. E., at 656.

The rule of *Massie* v. *Firmstone, supra,* has no application to the situation before us. The rule was intended to prevent unfairness, not to create it.

The plaintiff called the defendant as a witness and by him brought out that his lights were burning and that Whitaker entered the intersection when the approaching vehicle may have been too close for such entry—a version under which the defendant would have been free of gross negligence, and the plaintiff not subject to a charge of contributory negligence with respect to the defendant's driving. The plaintiff then called Whitaker and by him brought out that the lights were not burning on the defendant's vehicle—a version which supported a finding of gross negligence on the part of the defendant, but which also implicated the plaintiff in a charge of contributory negligence with respect to the defendant's driving.

Under these circumstances, it would be unfair to say that the defendant, in seeking to support his defense of contributory negligence, is so bound by his own testimony that he cannot rely upon the evidence supplied by Whitaker—the very evidence which formed the basis for a finding of gross negligence against him. To so say would permit the plaintiff to use the defendant's testimony as a shield to protect himself from a claim of contributory negligence and at the same time to use Whitaker's testimony as a sword upon which to impale the defendant for his alleged gross negligence.

We have held that a defendant, testifying in his own behalf, is not so bound by his own admissions as to be precluded from availing himself of defenses brought out in the evidence of his adversary, even though such evidence is at odds with his own. *Kidd and Taylor* v. *Little*, 194 Va. 692, 697, 74 S. E. 2d 787, 790 (1953). That rule should apply with greater force where the testimony of the defendant, by which the plaintiff seeks to say he is bound, is brought out by the plaintiff himself as a part of his case.

We are of opinion that the question of the plaintiff's contributory negligence should have been submitted to the jury. The testimony tending to show that the defendant was driving without lights, as disclosed by the plaintiff's evidence, coupled with the lack of protest or warning from the plaintiff, as disclosed by the defendant's evidence, comes close to but does not reach the point of warranting a finding of contributory negligence, as a matter of law, under the circumstances here present.

There was testimony to the effect that the plaintiff and the defendant had started out in the latter's vehicle from a business establishment a short, but undisclosed, distance west of the hillcrest below which the accident occurred. It was also shown that a portion of the area through which they first passed was illuminated to some unknown extent by lights on the business establishment and a street light.

In view of the distance involved and the presence of lighting in the area, it could well have happened that the alleged fact that the defendant was operating without lights was not brought to the attention of the plaintiff in time for him to make protest or give warning before the defendant sighted the Whitaker car. Since we cannot say with certainty that there was time and opportunity for protest or warning, we cannot hold, as the insurance company would have us hold as a matter of law, that the plaintiff was guilty of contributory negligence in failing to protest or warn. And since we do

not know the extent of the lighted area or the intensity of the lighting therein, we cannot say, as the plaintiff would have us say as a matter of law, that he did not have time and opportunity for protest or warning. These are matters properly to be decided by a jury, under appropriate instructions, upon a retrial of the case.

[3] Upon such retrial, the trial court should not, if requested so to do, grant Instruction No. 2 in the language in which it was previously submitted to the jury. That instruction, offered by the plaintiff, stated that gross negligence "may be defined as that degree of negligence which shows an utter disregard of prudence amounting to complete neglect for the safety of another, *in other words, carelessness manifestly and materially greater than want of common prudence*." [Italics supplied.]

The insurance company says that it has no quarrel with the first part of the definition of gross negligence, but contends that the italicized language was argumentative. We agree with that contention. The added language could have misled and confused the jury. Its use in the instruction expounded upon, rather than defined, gross negligence.

The italicized language of the instruction was taken from the opinion in the case of *Barham v. Bank*, 206 Va. 153, 157, 142 S. E. 2d 569, 572 (1965), where we were demonstrating the difference between the failure to use slight care on the one hand, and gross negligence on the other. The language was not contained in any instruction under consideration in the *Barham* case. It was appellate language, used to explain a point and not intended to be employed in an instruction.

The insurance company's final contention is that the court erred in refusing Instruction D, offered on behalf of the defendant. That instruction would have permitted the jury to pass upon the question of whether the Whitaker testimony was positive or negative and, depending upon the classification into which it fell, the use to be made thereof. In view of our holding here that the Whitaker testimony was positive, and not negative, it was not error to refuse the instruction.

For the error in refusing to submit to the jury the question of the contributory negligence of the plaintiff, the judgment of the trial court will be reversed, the verdict of the jury set aside, and the case remanded for a new trial upon all issues.

*Reversed and remanded.*